IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEWART C. GILBERT

Case No. 6:14-cv-02035-MA

Plaintiff,

OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

Defendant.

RICHARD F. McGINTY
McGinty & Belcher, Attorneys
P.O. Box 12806
Salem, OR 97301

    Attorney for Plaintiff

JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

ERIN F. HIGHLAND
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Stewart C. Gilbert seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I affirm the final decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on March 7, 2011, alleging disability beginning July 16, 2010, due to uncontrolled diabetes, attention deficit disorder, post-traumatic stress disorder ("PTSD"), bipolar disorder, depression, anxiety, and insomnia. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). An ALJ held a hearing on July 26, 2013, at which plaintiff appeared via video with his representative and testified. A vocational expert, Nancy E. Bloom, also attended the hearing and testified. On August 19, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1967, plaintiff was 45 years old on the date of the ALJ's unfavorable decision. Plaintiff has a college education and past relevant work as a bicycle shop clerk, construction worker, copy production worker, and web designer.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine*

2 - OPINION AND ORDER

*v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

Plaintiff meets insured status requirements for a DIB application through December 31, 2015. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since July 16, 2010. At step two, the ALJ found that plaintiff had the following severe impairments: anxiety disorders; attention-deficit disorder ("ADD") and attention deficit hyperactivity disorder ("ADHD"); and affective disorders. At step three, the ALJ found that plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity ("RFC") for a full range of work at all exertion levels but with the following limitations:

> [Plaintiff] can perform simple, routine, and some complex tasks with customary breaks and lunch. He can have no contact with the public for work tasks and occasional interaction with co-workers for work tasks averaging 15 minutes or less. There should be an emphasis on occupations/duties dealing with things/objects rather than people. [Plaintiff] is not able to perform at a production rate pace (e.g., assembly line work) but can perform goal oriented work (i.e., office cleaner). No more than occasional use of independent judgment should be needed for work tasks. He must avoid concentrated exposure to hazards (dangerous machinery, unprotected heights, etc.).

Transcript of Record ("Tr."), ECF No. 12 at 28.

At step four, the ALJ found that plaintiff is unable to perform his past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as hand packager, industrial cleaner, and mail sorter. Accordingly, the ALJ concluded

3 - OPINION AND ORDER

that plaintiff has not been under a disability under the Social Security Act from July 16, 2010 through the date of the ALJ's decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ erred in evaluating plaintiff's credibility; (2) the ALJ erred in evaluating the medical evidence; (3) the ALJ's decision is not supported by substantial evidence when considering new opinion evidence submitted to the Appeals Council; and (4) because of these errors, the hypothetical to the vocational expert was invalid.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## I.      The ALJ Did Not Err in Evaluating Plaintiff's Credibility

### A.      Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

### B.      Analysis

At the July 26, 2013 hearing, plaintiff testified that his depression and diabetes prevent him from working full time. Tr. 48. Plaintiff testified to having difficulty concentrating on tasks and socializing with people. *Id.* Plaintiff also testified that he has difficulty getting along with co-workers

but enjoys solving problems for people generally. Tr. 52. Plaintiff testified that he struggles to stay on task at times and has significant anxiety. Tr. 54. Plaintiff further testified that he experiences fatigue because he has trouble sleeping through the night. Tr. 56. Plaintiff testified that he has trouble with completing repetitive simple tasks but has no problem with complicated tasks. Tr. 58. Plaintiff further testified that if he intensely focuses on one task, such as showering, he may forget to complete another related task, such as brushing his teeth. Tr. 61. Finally, plaintiff testified that mental health counseling helped with his anxiety and stress. Tr. 60.

In a June 9, 2011 Adult Function Report, plaintiff noted that he takes care of his dog on a daily basis including feeding her and taking her for walks. Tr. 229. Plaintiff indicated that he rides his bike two to four times a week and spends one to four hours playing fantasy card games at a game store. Tr. 229. Plaintiff noted that he has trouble remembering to shower daily and take his medications. Tr. 230. Plaintiff also noted that he prepares one to two meals daily without assistance. Tr. 231. Plaintiff testified that he spends three to five hours per week completing household chores but sometimes forgets to transfer his clothes from the washer to the dryer. *Id.* Plaintiff indicated that he shops for electronics online and goes grocery shopping every two weeks. Tr. 232. Plaintiff also indicated that he has no difficulty paying his bills and managing a checkbook and bank account. *Id.* Plaintiff noted that he meets his friend at a game store two to four times a week and speaks with his other friends over the telephone three to four times a week. Tr. 233. Plaintiff also noted that he has difficulty following oral instructions but can follow written instructions. Tr. 234. Plaintiff further noted that he is able to pay attention for 30 minutes to one and a half hours. *Id.*

In a June 13, 2011 Pain & Fatigue Questionnaire, plaintiff indicated that he has pain in his stomach, wrists, and elbows. Tr. 227. Plaintiff noted that he experiences fatigue daily and requires

6 - OPINION AND ORDER

a nap everyday. Tr. 227. Plaintiff reported that he can be active three to four hours before needing
to rest. Tr. 228.

Contrary to plaintiff's assertion, the ALJ provided three clear and convincing reasons, citing
specific record evidence, which undermine his subjective complaints. As discussed below, the ALJ
also provided one unconvincing reason for discrediting plaintiff's allegation of pain. However, the
other three reasons adequately support the ALJ's credibility determination.

### 1. activities of daily living ("ADLs")

As the ALJ correctly noted, plaintiff's variety of ADLs are inconsistent with the level of
disability he alleges. For example, the ALJ noted that although plaintiff alleges that being in public
places causes him anxiety, plaintiff goes to a game store three times a week and shops in a grocery
store every two weeks. Tr. 30. Similarly, plaintiff alleges that he has difficulty interacting with other
people but reported interacting with friends and family on a weekly basis. Tr. 233. Specifically,
plaintiff plays games with his friend two to four times a week. *Id.* The ALJ also noted that plaintiff
performs household chores such as cleaning and preparing meals and recently taught his father how
to use a computer. Tr. 30. Indeed, plaintiff alleges having difficulty focusing on tasks but indicated
that he reads books everyday. Tr. 232. As the ALJ found, plaintiff "has shown the ability to engage
in simple and some complex tasks, socialize with others, sustain concentration and attend to his
personal needs." Tr. 30. Daily activities demonstrating the ability to concentrate and finish tasks
indicates a "capacity  that [is] transferable to a work setting." *Molina*, 674 F.3d at 1113.

While a claimant need not be completely incapacitated to be eligible for disability, here the
record shows that plaintiff's activities are fairly extensive, and the ALJ cited specific inconsistencies.
Plaintiff worked full time while alleging that he is completely disabled. As the ALJ noted, plaintiff

7 - OPINION AND ORDER

testified to working for T-Mobile from November 2012 through January 2013. Tr. 30, 45. Plaintiff testified that he would forget procedures and could not keep up with the pace of his job. Tr. 51. However, plaintiff also testified that his employer praised his abilities to work with people and solve problems. Tr. 51. Performance of job duties on a part-time basis, while not sufficient to establish work full time, can constitute a legitimate reason for discounting a claimant's assertion of disability. *See Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding that ALJ properly discounted claimant's credibility when the claimant had worked and sought other work since claimant's disability onset date).

Based on this significant evidence in the record, I conclude that the ALJ properly discredited plaintiff's testimony because his level of activity is inconsistent with the degree of impairment that he alleges. See *Berry*, 622 F.3d at 1235 (inconsistencies between self-reported symptoms and activities supported adverse credibility finding). Accordingly, I conclude that this basis is a clear and convincing reason, backed by substantial evidence, for rejecting plaintiff's subjective symptom statements.

### 2. inconsistency with medical record

The ALJ specifically found plaintiff's objective medical record is inconsistent with his subjective allegations of debilitating symptoms. Tr. 18. When the claimant's own medical record undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Morgan v. Commissioner Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Carmickle*, 533 F.3d at 1161. The ALJ's findings are supported by substantial evidence in the record.

As the ALJ found, the objective medical evidence does not support plaintiff's allegations of complete disability. For example, in a February 2011 examination, clinical social worker Anthony Gagliardo observed an appropriate appearance, cooperative behavior, unremarkeable speech, goal directed thinking, and normal judgment and insight. Tr. 318. In a May 2011 examination, plaintiff reported being in control, and Mr. Gagliardo documented a depressed mood, congruent affect, and an absence of hallucinations. Tr. 312. In fact, the majority of Mr. Gagliardo's counseling sessions reveal relatively unremarkable mental findings. *See generally*, Tr. 313, 319-321, 323, 324, 386, 391, 462, 483-84.

Moreover, the mental status findings are inconsistent with plaintiff's allegation of an inability to concentrate and complete tasks. For example, in a February 2012 consultative examination, Paul S. Stoltzfus, Psy.D., observed intact communication with expressive language, calm and friendly mood, and intact attention and concentration. Tr. 411. Dr. Stoltzfus noted that although plaintiff reported chronic levels of depression, he did not currently meet the criteria for major depressive disorder. Tr. 411. Similarly, a January 2012 noted a calm and euthymic mood and a logical, coherent and goal-oriented appearance. Tr. 378.

Furthermore, the medical record does not support plaintiff's allegations of severe fatigue and pain. In a July 2010 examination, physician's assistant Edwin Weih noted relatively unremarkable findings including normal gait and neurological signs, and healing skin lesions. Tr. 426. Although Mr. Weih noted that plaintiff's occasional skin picking results in skin infections on his face, he also noted that the infections heal within a week or two. Tr. 343-44. To be sure, plaintiff never reported symptoms of physical pain to Mr. Weih or any other treatment provider and did not request pain relieving medication. Tr. 363-64.

In sum, the ALJ reasonably concluded that the objective medical evidence in the record is inconsistent with the degree of plaintiff's subjective symptoms and appropriately discounted his credibility on this basis.

### 3. symptoms controlled with medication

Next, the ALJ found that plaintiff's medications have been relatively effective in controlling and treating his alleged symptoms as a basis to discredit his testimony. "Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for SSI benefits." *Warre v. Commissioner of Soc. Sec. Admin*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

The medical record supports the ALJ's finding that plaintiff's psychiatric symptoms are adequately controlled with medication. As the ALJ noted, in March 2011, plaintiff reported to Mr. Weih that Adderall helped him focus when he was working full-time. Tr. 342. Mr. Weih reported that plaintiff presented with a cheerful affect and opined that plaintiff is mentally competent to carry on his ADLs and manage his finances. *Id.* In April 2011, Mr. Weih noted that plaintiff's schizoaffective disorder was responding well to medication. Tr. 341. In May 2012, Mr. Weih again observed that plaintiff's schizoaffective disorder and type I diabetes were well controlled on medication. Tr. 415.

Although plaintiff alleges chronic severe depression, his treatment providers reported significant decrease in depression as a result of medications. As the ALJ noted, in May 2012, Nurse Bowling noted that plaintiff appeared "more grounded and linear than ever before" due to Abilify. Tr. 29, 479. Nurse Bowling noted that plaintiff later stopped taking Abilify due to worsening

depression. By November 2012, Nurse Bowling indicated that plaintiff reported no longer feeling depressed. Tr. 477. Indeed, Mr. Gagliardo's July and August 2012 treatment notes document a healthy mood and congruent affect. Tr. 483-485. Thus, I conclude that substantial evidence supports the ALJ's basis.

### 4. noncompliance

The ALJ cited to plaintiff's failure to take prescribed medication properly as an indication of a less than good faith effort to achieve medical improvement. Specifically, the ALJ noted that plaintiff failed to comply with prescribed psychiatric medication. Tr. 30. An "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

In this case, the ALJ noted that plaintiff testified to being unable to afford health insurance and prescription medications. Tr. 30. The ALJ inappropriately found that plaintiff's ability to own a car and cell phone, discretionary expenses, undermine his claim that he cannot afford health insurance and medication due to a lack of finances. The record does not support this conclusion. Although plaintiff owns a car and cell phone, he testified to living with his mother and receiving food stamps. Tr. 47. Moreover, the only evidence of possible noncompliance with medications is plaintiff's own testimony that he cannot afford medications. Tr. 57. A careful review of the record does not document plaintiff's failure to comply with his psychiatric medications. Accordingly, the ALJ's reasoning is not supported by substantial evidence.

In conclusion, although the ALJ's credibility reasoning does contain one error, this error does not invalidate the ALJ's overall adverse credibility finding. The ALJ's remaining reasons, when taken together, constitute clear and convincing reasons, supported by substantial evidence to discount

11 - OPINION AND ORDER

plaintiff's testimony. Therefore, I conclude that the ALJ's error is harmless. "So long as there remains substantial evidence supporting the ALJ's conclusions on...credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, such [error] is deemed harmless and does not warrant reversal." *Carmickle*, 533 F.3d at 1162; *Stout v. Commissioner Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## II.   The ALJ Properly Evaluated the Medical Opinion Evidence

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted); 20 C.F.R. § 416.927(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148(9th Cir. 2001). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

### A.   Lay Medical Opinion Evidence

Lay witness testimony as to how a claimant's symptoms affect his ability to work is competent evidence, which the ALJ must take into account. *Bruce v. Astrue*, 557 F.3d 1113, 1115

(9th Cir. 2009); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2014).

### 1. Physician's Assistant H. Edward Weih

Plaintiff argues that the ALJ erroneously rejected the opinions of plaintiff's treating physician's assistant H. Edward Weih. Specifically, plaintiff argues that the ALJ's germane reasons for discrediting Mr. Weih's opinions are not supported by substantial evidence. Plaintiff is incorrect.

Mr. Weih has treated plaintiff for over ten years in a primary care capacity. Tr. 452. Mr. Weih provided two types of opinions regarding plaintiff's functioning. First, in May 2012, Mr. Weih opined that plaintiff has been unable to engage in full-time work since May 2009. Tr. 414. Specifically, Mr. Weih opined that plaintiff's poorly controlled diabetes prevents him from returning to the work force. Mr. Weih has also occasionally noted in his treatment records that plaintiff is not mentally competent. Tr. 343.

Second, in an April 2011 long term disability assessment, Mr. Weih opined that plaintiff has marked limitations in social functioning, concentration, persistence, and pace, and adaptive skills. Tr. 451. Specifically, Mr. Weih opined that plaintiff is "not always able to properly interact socially" and is unable to perform work at a consistent level. Tr. 450. The ALJ gave both Mr. Weih's opinions "little weight" for several reasons. After a careful review of the record, I conclude that these germane reasons are supported by substantial evidence.

The ALJ rejected Mr. Weih's opinions because he is not an "acceptable medical source." *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), *superseded by regulation on other grounds as stated in Hudson v. Astrue*, No. CV–11–0025–CI, 2012 WL 5328786, at *4 n. 4 (E.D. Wash. Oct.

29, 2012) (acceptable medical source opinions may generally be accorded more weight than those from other sources such as a nurse practitioner). To be sure, the ALJ thoroughly discussed Mr. Weih's opinions with respect to the severity of plaintiff's impairments and functional limitations but ultimately rejected his assessment of plaintiff's work-related abilities. Tr. 32-33. Thus, the ALJ's reason is germane.

Next, the ALJ rejected Mr. Weih's opinions because they are inconsistent with his own treatment records. As the ALJ noted, on May 14, 2012, Mr. Weih opined that plaintiff could not engage in full time work activity. Tr. 414. However, in treatment note dated the same day, Mr. Weih opined that if plaintiff's current functioning continues, he "may be able to reenter the work force." Tr. 415. Additionally, plaintiff reported to Mr. Weih that he had a job interview the next day. *Id.* Moreover, in April 2011, Mr. Weih indicated that plaintiff is mentally competent and that his schizoaffective disorder is responding to medication. Tr. 423.  And, in May 2010, Mr. Weih noted that plaintiff was oriented and presented with a stable mood. Tr. 429. In March 2011, Mr. Weih indicated that plaintiff is alert, oriented and cheerful with occasional shifts in affect. Tr. 424. Overall, Mr. Weih's findings are relatively unremarkable. *See generally,* Tr. 343, 415, 423, 428, 433. Thus, the ALJ's reasonably found that Mr. Weih's opinion that plaintiff is unable to work inconsistent with Mr. Weih's own treatment notes and readily supplies a germane reason for discounting the opinion.

Finally, the ALJ properly rejected Mr. Weih's opinions because they are inconsistent with the observations of other treatment providers. As discussed previously, in a February 2012 examination, Dr. Stoltzfus observed a calm and friendly mood and intact concentration. Tr. 411. Dr. Stolzfus opined that plaintiff did not appear to meet the criteria for major depressive disorder. *Id.* Similarly, in May 2012, Nurse Bowling noted a calm euthymic mood, normal speech, and a logical

and coherent appearance. Tr. 479. Indeed, plaintiff's social worker, Mr. Gagliardo also observed essentially normal mental findings. *See generally,* Tr. 313, 319-321, 323, 324. While plaintiff provides an alternative interpretation of the medical evidence, I conclude that the ALJ made logical inferences from the record to support his conclusions. Because the ALJ's interpretation is rational and is supported by substantial evidence in the record as a whole, it will not be disturbed. *See e.g., Molina,* 674 F.3d at 1111 (ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record).

In summary, the ALJ provided several germane reasons, backed by substantial evidence to reject Mr. Weih's opinions. *Bayliss,* 427 F.3d at 1218.

### 2. Nurse Practitioner Cindy Bowling

Plaintiff also challenges the ALJ's evaluation of the opinion of nurse practitioner Cindy Bowling. Specifically, plaintiff argues that Ms. Bowling's opinion is supported by substantial evidence because it is consistent with the opinion of Mr. Gagliardo. Plaintiff's argument misses the mark.

In a May 2012 mental RFC assessment, Ms. Bowling opined that plaintiff is markedly limited in his ability to interact appropriately with co-workers and the general public and in his ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace. Tr. 375. Ms. Bowling also opined that plaintiff has moderate limitations in his ability to sustain attention and concentration for extended periods. Tr. 374. The ALJ accounted for Ms. Bowling's opinion regarding moderate limitations in attention and concentration in the RFC finding. Specifically, the ALJ found that plaintiff can perform simple, routine work with some complex tasks and cannot perform work at a production pace. Tr. 28.

However, the ALJ gave "little weight" to Ms. Bowling's opinion that plaintiff has marked limitations in social functioning for two germane reasons.

The ALJ appropriately discredited Ms. Bowling's opinion regarding marked limitations because her opinion is inconsistent with plaintiff's reported activities. An ALJ may reject a medical opinion that is inconsistent with a claimant's activities, including the ability to perform some work. *See Morgan*, 169 F.3d at 601-602. As the ALJ noted, plaintiff's ADLs are extensive for someone who alleges significant anxiety with social interactions and being out in public. For example, as discussed previously, plaintiff reported meeting his friend at a game store in town four times a week to play fantasy and role play games. Tr. 233. Plaintiff also indicated that he rides his bike two to four times a week and visits his stepson every couple of weeks. *Id.* Plaintiff also reported teaching his dad how to use a computer. Tr. 46. Thus, substantial evidence supports the ALJ's reasoning.

The ALJ also rejected Ms. Bowling's assessment because she is not an acceptable medical source. *Gomez*, 74 F.3d at 970. "The fact that a medical opinion is from an acceptable medical source is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source because . . . acceptable medical sources are the most qualified health care professionals." Social Security Ruling 06-03p, 2006 WL 2329939, *5 (Aug. 9, 2006). Accordingly, I conclude that the ALJ provided two germane reasons, backed by substantial evidence, to partially discredit Ms. Bowling's opinion.

### 3. Social Worker Anthony Gagliardo

Plaintiff attended counseling on a weekly basis with social worker Anthony Gagliardo. In an undated letter, Mr. Gagliardo opined that plaintiff's prognosis for returning to employment is poor. Tr. 385. Specifically, Mr. Gagliardo noted that plaintiff arrives 15 minutes late to appointments and

16 - OPINION AND ORDER

is extremely disorganized and at times is manic in his presentation. *Id.* Similarly, Mr. Gagliardo opined in an October 2010 treatment note that plaintiff is unlikely to resume work because of his need for constant monitoring as well as counseling. Tr. 371.

Additionally, in a June 2012 mental RFC assessment, Mr. Gagliardo opined that plaintiff has extreme limitations in social functioning, marked limitations in maintaining concentration, persistence, and pace, and has experienced four or more episodes of decompensation. Tr. 456. The ALJ provided three germane reasons, backed by substantial evidence, to reject Mr. Gagliardo's opinions.

Contrary to plaintiff's argument, Mr. Gagliardo's opinions are inconsistent with the medical evidence. For example, the ALJ noted that Mr. Gagliardo's opinions are not supported by the observations of Dr. Stoltzfus or consultative examiner David M. Freed, Ph.D. As discussed previously, Dr. Stoltzfus noted that plaintiff was punctual for the examination and presented with appropriate attire and no skin infections on his face. Tr. 411. Dr. Stoltzfus also observed rapid but normal speech, calm and friendly mood, and intact concentration. *Id.* Dr. Stoltzfus opined that although Mr. Gagliardo diagnosed schizoaffective disorder, the current evaluation does not provide any evidence of a thought disorder. *Id.* Similarly, in a January 2012 examination, Dr. Freed observed that plaintiff had fluent and well-articulated speech and scored a 30 out of 30 on the mini-mental status examination (MMSE). Tr. 400. Dr. Freed noted that plaintiff obtained average scores on several intelligence quotient (IQ) tests. The findings of Drs. Stoltzfus and Freed contradict Mr. Gagliardo's opinion that plaintiff has marked and extreme limitations in the areas of social functioning and maintaining concentration, persistence, and pace.

Similarly, Mr. Gagliardo's treatment notes do not support his finding that plaintiff experienced four or more episodes of decompensation. Social security regulations define an episode of decompensation as "[E]xacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). As the ALJ noted, Mr. Gagliardo's treatment notes do not support episodes of decompensation. Tr. 31. For example, in June 2012, Mr. Gagliardo observed a healthy mood, congruent affect, and normal judgment and insight. Tr. 462. Mr. Gagliardo noted essentially unremarkable objective findings including appropriate appearance, cooperative behavior, linear thinking, and depressed mood. *See generally* Tr. 312- 338, 396. To be sure, a careful review of the medical record does not document any evidence of a mental breakdown or hospitalization for a psychotic break. I conclude the ALJ's first reason for rejecting Mr. Gagliardo's opinion is wholly supported by substantial evidence.

The ALJ also discredited Mr. Gagliardo's opinions on the basis that they are inconsistent with plaintiff's ADLs. As discussed previously, plaintiff testified to engaging in significant activities such as meeting a friend and playing at a game store four times a week. Tr. 233. Plaintiff also reported obtaining a job for several months in 2012. Tr. 44, 477. In fact, plaintiff testified that his employer complimented him on working well with people and customers specifically. Tr. 51. Based on the previous discussion of plaintiff's numerous ADLs, I conclude that the ALJ's second reason, supported by substantial evidence, is germane.

Finally, the ALJ rejected Mr. Gagliardo's opinion because he is not an acceptable medical source. Similar to Mr. Weih and Ms. Bowling, Mr. Gagliardo is not a licensed psychiatrist or

18 - OPINION AND ORDER

psychologist. *Gomez*, 74 F.3d at 970. Accordingly, the ALJ provided three germane reasons, backed by substantial evidence to discredit Mr. Gagliardo's opinions.

### B.    David M. Freed, Ph.D.

Plaintiff argues the ALJ failed to provide specific and legitimate reasons for discounting the opinions of examining psychologist David M. Freed, Ph.D. Plaintiff contends that Dr. Freed's opinion regarding his functioning should be credited as true because Dr. Freed's examination supports his opinion. I disagree.

Dr. Freed conducted a neuropsychological evaluation of plaintiff on December 9, 2011, and prepared a report dated January 12, 2012. Tr. 397. Dr. Freed noted that plaintiff arrived early for his appointment and conscientiously completed the necessary paperwork without assistance. Tr. 399. Dr. Freed observed that plaintiff appeared anxious but presented with appropriate hygiene and grooming. *Id.* Dr. Freed diagnosed plaintiff with ADHD; major depressive disorder, recurrent moderate; generalized anxiety disorder; obsessive-compulsive disorder; and Asperger's disorder (provisional). Tr. 401. Dr. Freed opined that plaintiff's impairment in social skills is a significant barrier to competitive employment. Tr. 402. Dr. Freed also echoed plaintiff's symptoms of difficulty with recent memory, concentration, and mood. *Id.*

Because Dr. Freed's opinion was contradicted,[1] the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, to reject his opinion. *Bayliss*, 427 F.3d at 1216. The ALJ discussed Dr. Freed's opinion and accorded the opinion "little weight" because it is

---

[1] In a March 15, 2012 Mental RFC Assessment, nonexamining physician Megan D. Nicoloff, Psy.D., opined that plaintiff can follow through on simple tasks and routines, but will not be able to consistently maintain attention and concentration on more complicated and detailed tasks. Tr. 99. Dr. Nicoloff further opined that plaintiff should avoid contact with the general public but can interact with co-workers and supervisors. Tr. 100.

inconsistent with plaintiff's reported activities. Having carefully reviewed the record, I conclude that the ALJ's reasoning is supported by substantial evidence.

Contrary to plaintiff's argument, the ALJ adequately rejected Dr. Freed's opinion because his opinion is inconsistent with plaintiff's reported daily activities. *See Morgan*, 169 F.3d at 601-602 (ALJ may reject a medical opinion on the basis of inconsistency with a claimant's activities.). As the ALJ noted, plaintiff socializes with friends, family, and the public on a weekly basis. Tr. 31, 229. Plaintiff testified to riding bicycles in town with his stepson and fixing his stepson's bike for him. Tr. 68-69. Overall, plaintiff's numerous social activities are inconsistent with Dr. Freed's opinion that plaintiff's impairment in social functioning is a barrier to competitive employment. Indeed, the ALJ properly accounted for some limitations in plaintiff's social skills in the RFC finding, including no contact with the public and only occasional co-worker interaction. Tr. 28. Thus, I conclude that the ALJ provided a specific and legitimate reason, supported by substantial evidence, for rejecting Dr. Freed's opinion.

Plaintiff argues that the ALJ erred in crediting the opinions of nonexamining physicians Dorothy Anderson, Ph.D., and Megan D. Nicoloff, Psy.D, over Dr. Freed's opinion. Plaintiff also contends that the ALJ selectively cited to evidence in the medical record to support the assessments of Drs. Anderson and Nicoloff while ignoring contrary evidence. I disagree.

The ALJ appropriately gave "significant weight" to the opinions of Drs. Anderson and Nicoloff. Tr. 30. In a June 21, 2011 Mental RFC Assessment, Dr. Anderson opined that plaintiff can follow through on simple tasks and routines, but will not be able to consistently maintain attention and concentration on more complicated and detailed tasks. Tr. 85. Dr. Anderson further opined that

plaintiff should avoid contact with the general public but can interact with co-workers and supervisors. Tr. 86. Dr. Nicoloff affirmed Dr. Anderson's opinion on March 15, 2015. Tr. 100.

The ALJ provided a comprehensive discussion of the medical evidence supporting the opinions of Drs. Anderson and Nicoloff. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (the ALJ need not discuss all evidence presented but rather must explain why "significant probative evidence has been rejected"). For example, as the ALJ noted, Dr. Freed's objective findings support the assessments of Drs. Anderson and Nicoloff. Tr. 30. Dr. Freed reported a perfect score on the MMSE and average IQ scores. Tr. 400. Dr. Freed also observed that plaintiff was oriented to person, place, and time, and presented with fluent and well-articulated speech. Tr. 399-400. Similarly, Dr. Stoltzfus observed a calm, friendly mood and cooperative demeanor throughout the evaluation. Tr. 411. To be sure, plaintiff does not identify any "significant probative evidence" that the ALJ failed to address.

Moreover, the objective findings of Mr. Gagliardo, Mr. Weih, and Ms. Bowling also support Drs. Anderson and Nicoloff's opinions. As discussed previously, Mr. Gagliardo, Mr. Weih, and Ms. Bowling documented relatively unremarkable mental findings and the ALJ appropriately discounted their opinions as inconsistent with those findings. *See generally,* Tr. 312-338, 377-383, 415-426. Thus, the ALJ did not err in relying on the opinions of Drs. Anderson and Nicoloff because their opinions are consistent with the objective evidence as a whole.

Accordingly, I find that the opinions of Drs. Anderson and Nicoloff are supported by substantial evidence in the record, and the ALJ did not err in relying on these opinions. Thus, the RFC finding is supported by substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th

Cir. 1995) (the opinion of a nonexamining physician "may serve as substantial evidence when [it is] supported by other evidence in the record" and consistent with it).

## III.   New Evidence Does Not Undermine the ALJ's Decision

This court has a duty to consider the entire record before it, including new evidence submitted to the Appeals Council and made part of the overall administrative record. "When the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Commissioner Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012); *see Tackett*, 180 F.3d at 1097-98 (holding that a court reviewing the Commissioner's decision must consider the record as a whole).

After the ALJ issued his decision, plaintiff submitted additional evidence to the Appeals Council. Specifically, the new evidence consisted of a March 5, 2014 Psychological Evaluation Report from Dr. Freed. Tr. 491-500. The Appeals Council considered the new evidence, made it part of the medical record, but denied review of the ALJ's decision. Tr. 1-5.

In his examination report, Dr. Freed diagnosed Asperger's disorder, generalized anxiety disorder, obsessive-compulsive disorder, cognitive disorder (nos), and attention deficit hyperactivity disorder. Tr. 496. Dr. Freed again observed that plaintiff was punctual and presented with appropriate hygiene and some skin infections on his face. Tr. 495. Dr. Freed noted that plaintiff presented with a depressed mood, anxious affect, and spontaneous pressured speech. *Id.* Dr. Freed also noted that plaintiff scored a 23 out of 30 on the MMSE, an average score on reading and language tests, and a below average score on memory testing. *Id.* Dr. Freed opined that the 2014 assessment is consistent with his December 2011 assessment. Tr. 497. Dr. Freed also provided a

22 - OPINION AND ORDER

mental RFC assessment and opined that plaintiff has no more than moderate limitations in all areas of functioning. Tr. 500-501. Plaintiff argues that Dr. Freed's examination report undermines the substantial evidence supporting the ALJ's decision. Plaintiff's argument is incorrect.

As discussed above, the ALJ properly discredited Dr. Freed's December 2011 assessment, which is "entirely consistent" with the results of Dr. Freed's 2014 assessment. Tr. 497. Moreover, the ALJ properly rejected the opinions of Mr. Gagliardo and Ms. Bowling to the extent that they were inconsistent with the RFC finding. Additionally, Dr. Freed's opinion is inconsistent with Drs. Anderson and Nicoloff, which are well-supported by the medical record. To the extent that Dr. Freed opined mild limitations in understanding and performing simple routine work, the ALJ accounted for these limitations in his RFC finding.

In sum, after reviewing the entire record, the new evidence presented to the Appeals Council does not change my conclusion that the ALJ's decision is supported by substantial evidence.

## IV.    The ALJ Did Not Err at Steps Four and Five

Finally, I reject plaintiff's argument that the ALJ's hypothetical posed to the VE was invalid. As discussed above, the ALJ did err in evaluating plaintiff's crediblity or the medical evidence. Accordingly, the ALJ incorporated all credited limitations into the RFC and the ALJ properly included them in the hypothetical posed to the VE. Accordingly, the ALJ could rely upon the VE testimony. *Valentine*, 574 F.3d at 694; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

////

////

////

23 - OPINION AND ORDER

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this __11__ day of JANUARY, 2016.

Malcolm F. Marsh
United States District Judge

24 - OPINION AND ORDER